UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRENNAN L. BALL,                          Case No. 1:19-cv-691
    Plaintiff,                                 Litkovitz, M.J.

vs.

UPSHIFT WORK LLC,                    **ORDER**
    Defendant.

## I.     Introduction

Plaintiff Brennan Love Ball brings this action pro se against his former employer Upshift Work LLC[1] (Upshift), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA). This matter is before the Court on Upshift's motion for summary judgment (Doc. 20), plaintiff's response in opposition (Doc. 27), and Upshift's reply (Doc. 28). Although requested, the Court has deemed oral argument unnecessary. *See* S.D. Ohio Civ. R. 7.1(b)(2). For the reasons set forth below, Upshift's motion for summary judgment will be **GRANTED.**

## II.     Facts

To the extent undisputed and unless otherwise noted, the following facts are drawn from the evidentiary materials in support of Upshift's motion for summary judgment.[2] Upshift provides temporary workers for its customers' businesses. (Pantich Aff., Doc. 21 at ¶¶ 3, 6). Its customers notify Upshift of available shifts, which Upshift then posts on its smartphone application for review and selection by its employees. (*Id.* at ¶¶ 7-8). Typical shift work

---

[1] Plaintiff's complaint misidentified defendant's full name as "Upshift." (*See* Doc. 5 at PAGEID#: 29).
[2] These include the affidavit of Alex Pantich, Upshift's Chief Operating Officer (Doc. 21), a record of plaintiff's nine completed shifts with Upshift (Doc. 21-1); a record of messages between plaintiff and Upshift pertaining to the missed shift at issue (Doc. 21-2); an email from Upshift to plaintiff informing the latter of his permanent suspension (Doc. 21-3); plaintiff's responses to Upshift's discovery requests (Doc. 21-4); and the affidavit of Jessica Anevski, an Upshift Accounts Supervisor (Doc. 22).

includes "bussing for hospitality businesses, performing physical labor at warehouses or manufacturing facilities, and assisting with administrative functions in office settings." (*Id.* at ¶ 5).

Upshift uses a "three strike" disciplinary policy, where the accumulation of three strikes results in permanent suspension and termination. (*Id.* at ¶ 15; Anevski Aff., Doc. 22 at ¶ 7). Certain conduct, such as leaving a shift early or inappropriate dress, warrants a single strike. (*Id.* at ¶ 16). But if an employee fails to appear for a shift without first notifying Upshift, this automatically results in three strikes under Upshift's "No-Call-No-Show" policy. (*Id.* at ¶ 17). The parties disagree as to whether Upshift made plaintiff aware of the "No-Call-No-Show" policy. In his response memorandum, plaintiff implies that his orientation did not cover it (Doc. 27 at PageID #: 131), but Ms. Anevski states in her affidavit that she discussed the "No-Call-No-Show" at plaintiff's orientation. (Doc. 22 at ¶¶ 2, 6-7). This strict policy has been uniformly enforced, except for one instance where an employee was involved in a serious car accident on the way to his shift. (*Id.* at ¶ 18).

Plaintiff completed his online application on April 1, 2019. Plaintiff attended an orientation on April 4, 2019, facilitated by Ms. Anevski. (Doc. 22 at ¶ 2). Starting the next day, plaintiff accepted a total of ten shifts between April 5 and April 16, 2019. (Doc. 21 at ¶ 22; Doc. 21-1). On April 12, 2019, plaintiff accepted a shift at Marriott Rivercenter as a banquet server. (Doc. 21 at ¶ 23). Plaintiff did not attend this shift or inform Marriott Rivercenter or Upshift that he would be absent. (*Id.*). On April 16, 2019, because plaintiff violated the "No-Call-No-Show" policy, Upshift placed him on permanent suspension. (*Id.* at ¶ 26; Doc. 21-3).

Plaintiff filed suit in August 2019. The full statement of his claim is the following: "UPSHIFT was my employer for two weeks[.] At the end of my employment, I told UPSHIFT I

2

had a disability. They still fired me while I was under review; I was trying to explain I was technologically disadvantaged & taking medication." (Doc. 3 at PAGEID #: 20). Plaintiff characterizes his disability as "a collection of things, it[']s been called psychosis, schizo-effective disorder, anxiety disorder, and PTSD . . . [,]" which he has experienced "since about 2013." (Pl.'s Resp. to Def.'s Interrogs., Doc. 21-4, PAGEID #: 108-09). He states that has been prescribed marijuana, Klonopin,[3] and Abilify for these various mental illnesses. (*Id.* at PAGEID #: 109).

Upshift disclaims any knowledge of plaintiff's alleged disability prior to or during his employment. (*See* Doc. 21 at ¶¶ 12-13, 20-21; Doc. 22 at ¶¶ 5, 8). Plaintiff's argument on this point has shifted. As noted above, his complaint states that he informed Upshift about his disability "[a]t the end of [his] employment." (Doc. 3 at PAGEID#: 20). In his interrogatory responses, he implies that he divulged the information during the application process but avoids specifics, stating, "as you probably [know] most applications ask you [to] divulge if you have a disability during the application process. This is where I initially told Upshift that I had a disability. The date and time would be linked to the electronic record when I submitted my application through their portal." (Doc. 21-4 at PAGEID #: 109). In his response memorandum, plaintiff reverts to the allegation in his complaint, admitting "defendant is right there is no place in the online application to divulge a disability to [U]pshift at the onset of employment. . . ." (Doc. 27 at PAGEID #: 132). He instead implies that he submitted three doctors' notes to Upshift regarding his disability following his suspension but prior to his termination. (*Id.*).

While his complaint suggests that he brings a discrimination claim under the ADA, plaintiff also states in his response memorandum that Upshift "violated ADA requirements on

---

[3] The Court understands "kolonpins" in plaintiff's interrogatory response to refer to the prescription drug Klonopin.

providing reasonable accommodations." (*Id.*). The Court will consider his claim under both formulations.

### III. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249; *Little Caesar Enters., Inc.*, 219 F.3d at 551. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

**IV.    Law**

A party may establish disability discrimination under the ADA via direct or indirect evidence. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was [the] motivating factor in the employer's actions" and "does not require the fact finder to draw any inferences to reach that conclusion." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)) (internal quotation marks omitted); *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The record in this case does not contain evidence of direct discrimination, so the Court looks to the standard for assessing cases with indirect evidence of discrimination.

To establish a prima facie case of employment discrimination under the ADA based on indirect evidence, the plaintiff must show that (1) he was disabled; (2) he was otherwise qualified to perform the essential functions of his position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the defendant knew or had reason to know of his disability; and (5) the position remained open or a non-disabled person replaced the plaintiff. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004)).

5

Once the plaintiff makes out this prima facie case, the "burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action. . . ." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (citations omitted). This is a non-onerous burden of production and not persuasion. *See Robinson v. Georgia-Pacific Corrugated, LLC*, No. 1:18-cv-307, 2020 WL 473543, at *7 (S.D. Ohio Jan. 29, 2020) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If a defendant is successful in presenting a non-discriminatory reason for the termination of the plaintiff, the burden shifts back to the plaintiff to demonstrate that the defendant's reasoning is pretextual. *Whitfield*, 639 F.3d at 259 (citations omitted).

To the extent that plaintiff alleges a failure to accommodate under the ADA, the Sixth Circuit applies a direct evidence test. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020) (holding that the direct evidence test applies to failure to accommodate claims because such claims necessarily involve direct evidence of discrimination). Under this test,

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007)). The plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber*, 485 F.3d at 870 (quoting *Hedrick*, 355 F.3d at 457).

## V.     Analysis

Upshift argues that plaintiff has not presented sufficient evidence that (1) he is disabled, (2) Upshift knew or should have known about his disability, or (3) Upshift replaced plaintiff because of his disability. Upshift maintains that even if plaintiff could make out a prima facie case for disability discrimination based on indirect evidence, it has articulated a legitimate, non-discriminatory reason for plaintiff's termination. To the extent that plaintiff's complaint is construed as raising a claim for failure to accommodate, Upshift also contends that plaintiff never sought an accommodation. Finally, Upshift argues that plaintiff's alleged damages are untethered to any evidentiary basis.

### A.     Whether plaintiff has a disability under the ADA

A plaintiff may show that he is "disabled" as defined in the ADA by showing "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). Plaintiff does not address this definition, but his complaint appears to focus on subsection (A).

Upshift relies on *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195-98 (2002), for the proposition that plaintiff must present a substantial level of proof showing that plaintiff suffers from a physical or mental impairment that substantially limits a major life activity. It relies on *Baum v. Metro Restoration Servs., Inc.*, 764 F. App'x. 543, 546 (6th Cir. 2019) for the proposition that expert testimony is required to establish plaintiff's alleged disability.

This reliance is misplaced. *Toyota* was displaced by the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (ADAAA). Therein, Congress explicitly rejected "the standards enunciated by the Supreme Court in [*Toyota*]. . . ." *Id.* at § 2(b)(4-5). The ADAAA states that

"the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis. . . ." *Id.* at § 2(b)(5). "The definition of 'disability' in this Act shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this Act." *Id.* at § 4(a).

In addition, *Baum* does not compel the use of expert testimony to establish disability. In *Baum*, the Sixth Circuit considered a plaintiff with complex cardiovascular and circulatory problems, who presented medical records containing terms "rarely appear[ing] outside the medical profession." 764 F. App'x at 546. In that case, the court found that an expert witness was required to understand the records. *Id.* (citing Fed. R. Evid. 702). That is not necessarily the case here. *Cf. Taylor v. Specialty Rests. Corp.*, No. 2:12-cv-44, 2014 WL 4922942, at *3 (S.D. Ohio Sept. 30, 2014) (in a case where the plaintiff suffered from clinical depression, acute anxiety, and panic attacks, noting that "[d]efendant . . . placed its emphasis on the *mistaken* belief that Plaintiff was required to produce expert testimony to establish that he suffered from a qualifying disability. . . .") (emphasis added).

Nevertheless, plaintiff still carries the evidentiary burden to show his disability. *Id.* at *5 ("[T]he ADAAA left untouched the plaintiff's burden of proof; he still has to prove he has a disability.") (quoting *Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d 1252, 1263-64 (M.D. Ala. 2012)) (remaining citation omitted). But the Court need not reach whether an expert witness is required to assist in interpreting medical evidence regarding plaintiff's disabilities, because there is no medical evidence regarding plaintiff's disabilities. In his interrogatory responses, plaintiff self-describes his conditions and identifies four individuals that he anticipates calling as lay witnesses: Bill Reese with Opportunities for Ohioans with Disability, an unnamed "HR rep," an unnamed "Case manager," and Chris Haubner, for whom

no explanation is given. (*See* Doc. 21-4 at PAGEID #: 108-09). This is the only information in the record pertaining to plaintiff's alleged disability. Even where a formal diagnosis may not be required to satisfy the first prong of the prima facie case, plaintiff's narrative explanation "without *corroborating medical evidence* or any diagnosis [is] insufficient to establish a substantial limitation on a major life activity." *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 435 (6th Cir. 2016) (emphasis added). Plaintiff has not proffered sufficient evidence that he has a disability for purposes of the ADA.

### B. Whether Upshift knew or should have known about plaintiff's disability

"[A] plaintiff must establish, as an element of his or her prima facie case, that the defendant knew or believed that the plaintiff was disabled, or knew of the plaintiff's symptoms that were caused by the disability." *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir. 1996) (citation omitted) (discussing the prima facie case in an indirect evidence case under the Rehabilitation Act).[4]

Upshift has provided the affidavits of two employees, each of whom states that they did not know of plaintiff's alleged disability prior to or during the term of his employment. (*See* Doc. 21 at ¶¶ 12-13, 20-21; Doc. 22 at ¶¶ 5, 8). Plaintiff's only *sworn* allegation on this point is that he informed Upshift about his disability "[a]t the end of [his] employment." (Doc. 3 at PAGEID #: 20). Plaintiff also argues in his response memorandum that he submitted three doctors' notes to Upshift during what he characterizes as a "probationary suspension stage" (Doc. 27 at PAGEID #: 132), but plaintiff's unsworn statements in this memorandum are not evidence the Court may consider on summary judgment. *See* Fed. R. Civ. P. 56(c); *Dole v.*

---

[4] "By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination. 29 U.S.C. § 794(d)." *Burns*, 91 F.3d at 842; *accord Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) (acknowledging that the prima facie discrimination cases under the Rehabilitation Act and the ADA are the same).

*Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) (a court may not consider unsworn statements when ruling on a motion for summary judgment). Upshift has provided email correspondence showing that plaintiff was permanently suspended as of April 16, 2019 (Doc. 21-3) and aware of his suspension (Doc. 21-2), evidence which plaintiff has not rebutted and which strongly suggests that there was no "probationary suspension stage" during which he would have submitted these doctors' notes prior to termination. Plaintiff has not provided the doctors' names, doctors' notes, or any other evidence (such as his own sworn statement) to allow a jury to draw a reasonable inference in his favor. *See Scott*, 550 U.S. at 380. Plaintiff has failed to create a genuine issue of fact that Upshift knew or had reason to know of plaintiff's alleged disability prior to his termination.

  **C. Whether the position remained open or a non-disabled person replaced the plaintiff**

Plaintiff must show that he was replaced by a non-disabled person or that his position remained open while the employer searched for another employee. *Gecewicz*, 683 F.3d at 321 (6th Cir. 2012); *Steele v. Oasis Turf & Tree, Inc.*, No. 1:10-cv-769, 2012 WL 3028514, at *5 (S.D. Ohio July 25, 2012). This element has also been characterized as evidence of non-disabled employees being treated more favorably despite similar conduct. *See, e.g., Upchurch v. Mount Caramel Health Sys.*, 893 F. Supp. 2d 899, 912 (S.D. Ohio 2012). In either case, plaintiff's proof on this element falls short. Plaintiff has proffered no evidence regarding his replacement by Upshift. Upshift presented evidence that it indiscriminately enforces its "No-Call-No-Show" policy. (Doc. 21 at ¶ 18; Doc. 22 at ¶ 7). Mr. Pantich stated that with one exception, in which an employee was involved in a major car accident on his way to his shift, all "No-Call-No-Show" offenders have been subject to the same treatment as plaintiff. (Doc. 21 at ¶ 18). Plaintiff does

not rebut this evidence. A jury would have no reasonable basis to draw an inference in favor of plaintiff on this element of the prima facie case.

### D. Whether Upshift has stated a legitimate, non-discriminatory reason for terminating plaintiff

Even if plaintiff had met his prima facie burden, Upshift has presented a legitimate, non-discriminatory reason for plaintiff's termination: plaintiff's failure to comply with the "No-Call-No-Show" policy. As Upshift explains in its motion, the "No-Call-No-Show" policy is critical to Upshift's business model and reputation to provide its customers a reliable work force. Although plaintiff argues that he was not made aware of this policy, he has not presented evidence creating a genuine issue of fact on Upshift's articulated reason for his termination. Upshift easily meets its "non-onerous burden" of showing a legitimate, non-discriminatory reason for plaintiff's termination. *See Robinson*, 2020 WL 473543 at *7. The burden therefore shifts back to plaintiff to show that that this proffered reason is pretextual. Plaintiff does not present any evidence on or address pretext at all. With no argument (let alone evidence) on this point, no reasonable inference can be made on plaintiff's behalf and summary judgment is appropriate.

### E. Whether plaintiff asked for reasonable accommodation

Upshift argues that plaintiff never asked for an accommodation for his disability prior to his suspension, which is supported by two employees' sworn statements. (Doc. 21 at ¶ 21; Doc. 22 at ¶ 8). Plaintiff does not dispute this contention; rather, he seems to argue that Upshift violated the ADA by failing to instruct him how to seek an accommodation. He cites no authority for this proposition.

Like with an ADA discrimination claim, a plaintiff seeking to establish a failure to accommodate claim must first show that he is disabled. *Kleiber*, 485 F.3d at 869. Then, it is the

11

plaintiff, not the employer, who "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Id.* at 870 (quoting *Hedrick*, 355 F.3d at 457). The Court has already concluded that plaintiff has not established he is disabled under the ADA. But even if he could, plaintiff neither proffers his own evidence nor rebuts Upshift's concerning his failure to request an accommodation. The Court is aware of no statutory or other authority that imposes a duty on an employer to assist an employee in proposing a reasonable accommodation. Summary judgment is appropriate to the extent that plaintiff's complaint may be construed to allege a failure to accommodate under the ADA.

### F. Damages

Plaintiff's complaint seeks "$3,000,000.00 and my job back." (Doc. 3 at PAGEID #: 21). The ADA incorporates the remedies provided under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a); *accord Bullington v. Bedford Cty., Tenn.*, 905 F.3d 467, 474 (6th Cir. 2018) ("The ADA uses the procedures set forth in Title VII."). "Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action [for a prohibited reason.]" *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 721 (6th Cir. 2004) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 523-24 (1993)). Because summary judgment is appropriate on plaintiff's claims for the reasons discussed above, the Court need not evaluate his damages request.

### VI. Conclusion

Plaintiff has not established a prima facie case of disability discrimination or failure to accommodate under the ADA. Even if plaintiff could establish a prima facie case for discrimination, he has failed to produce evidence showing that Upshift's legitimate, non-

discriminatory reason for terminating him was pretextual. Upshift's motion for summary judgment (Doc. 20) is **GRANTED.** This action is **DISMISSED** on the docket of the Court.

Date: 8/17/2020

Karen L. Litkovitz
United States Magistrate Judge